ROGERS, J.
 

 The plaintiff corporation brought this suit against James Lynch and I-Iunter L. Wilson to recover $2,218.50 as the alleged value of a package of jewelry sent by it to its presiden^ Alex W. Rothschild, at New Orleans and delivered to the Cosmopolitan Hotel, operated by defendants, which package was never delivered to the addressee.
 

 Defendants filed an exception of no cause of action, which was sustained by the court below. This ruling was set aside on appeal, and the case remanded for a trial on the merits. See Alex W. Rothschild & Co. v. Lynch et al., 157 La. 849, 103 So. 188. Thé trial on the merits resulted in a judgment for plaintiff as prayed for, and the defendants have appealed.
 

 ■ The evidence shows that Alex W. Rothschild, the president of the plaintiff corporation, arrived in New Orleans on February 12, 1920, on which date he became a guest of defendants’ hotel, where he remained until the afternoon of February 15, 1920. On leaving the hotel, Mr. Rothschild, who had not received a package which he had been expecting to receive from his New York office, left with the clerk of the hotel a forwarding address to which the package should be re-addressed on its arrival. The package was forwarded from New York on February 11, 1920, by registered mail, addressed to Mr. Rothschild in care of the Cosmopolitan Hotel, New Orleans,- La., and reached New Orleans on or about February 15, 1920. In the early morning of February 16, 1920, the package was delivered at defendants’ hotel, where it was received and receipted for by one Henry Fasnaeht, one of defendants’ employees. Fasnacht and one Ducote, the night clerk, were on duty at the time. The night clerk, at the moment, was upstairs -in the dressing room, and when he came downstairs to the
 
 *117
 
 hotel office Fasnaeht delivered the package to him. The package, however, was not redelivered to Rothschild, nor was it returned to the plaintiff corporation. Rothschild promptly took up the matter of the lost package with the defendants, but without avail. An investigation instituted by the defendants and an investigation also conducted by the post office authorities were unproductive of any result. From the time the package was delivered by Fasnaeht to Ducote, defendants’ representative, all trace of it was lost. Du-cote did not testify in the case, because, as suggested by the defendants, he could not be found, although no direct proof of that fact was made. Both Ducote and Fasnaeht, however, did make statements to the post office inspectors in charge of the investigation on behalf of the federal government. These statements were not available to the parties herein, because, after being held for the requisite period of time, they were destroyed by the post office authorities.
 

 The evidence also establishes the fact that the package contained fourteen diamond rings mounted in platinum, the cost price of which, in the aggregate, was $1,583.29, and the selling price of which was, in the aggregate, $2,-218.50.
 

 Our conclusion is that the defendants must repair the damage caused the plaintiff by the loss of their rings. The authority of Ducote to receive on behalf of the defendants the package containing the rings is not seriously questioned by defendants. Since Rothschild had left defendants’ hotel, defendants’ .liability, on receipt of plaintiff’s property through their employees, was that of gratuitous bailees or voluntary depositaries, and not that of innkeepers. Being unable, as gratuitous bailees or voluntary depositaries, to explain the disappearance of the deposit or to show their own freedom from negligence, they are liable for its loss. See Rothschild v. Lynch, referred to supra. In these circumstances, Oiv. Code, art. 2971 (as amended and re-enacted by Act 231 of 1912), limiting the liability of an innkeeper to $100, is not appropriate.
 

 But our _ conclusion is, also, that plaintiff’s measure of damages is the cost price and not the selling price of the articles lost. There is no pretense on the part of Rothschild, the president of the plaintiff corporation, that he had sold, or had contracted to sell, the "rings contained in the missing package. He goes no further, in his testimony, than to assume that he could have sold the rings, because there was a big demand at the time for that particular class of jewelry. In any event, there is no reason why, and there is nothing in the “record to show the contrary, that the plaintiff company could not have recouped its loss by repurchasing from the manufacturers the identical number of rings of like quality and at the same cost, and then selling them to prospective purchasers at "the selling prices referred to in the testimony. The plaintiff company having, failed to minimize its loss, its claim for damages must, necessarily, be reduced to the extent to which it could have avoided the loss.
 

 The rings cost the plaintiff company $1,-583.29, and that, as their replacement value, is the extent of defendants’ liability for their loss.
 

 For the reasons assigned, the judgment appealed from is amended by reducing the principal amount thereof from $2,218.50 to $1,-583.29, and, as thus amended, the judgment is affirmed; plaintiff and appellee to pay the costs of appeal.